# Richmond.

ODELL AND ALS. V. HOWLE AND ALS.

SAME V. HOWLE'S ADM'R AND ALS.

April 5th, 1883.

Absent, *Lacy, J.*\*

SHERIFF—*Administrator—Sureties—Case at bar.*—Decedent's estate, embracing a slave, was, in 1853, committed to sheriff H. for administration. In 1858, when H. had ceased to be sheriff, and no debts were unpaid, and he had turned over the slave to the widow; under an order of the county court, H. sold the slave, but failed to account for proceeds. Distributees sued H. therefor, and subsequently amended their bill so as to charge his sureties as sheriff. The county records had been mostly destroyed. The bond for 1852–'54, after diligent search, could not be found. The secondary evidence that the defendants were the sureties on that bond, was vague and uncertain. On appeal:

HELD:

> If the defendants, who are charged as sureties for H. as sheriff for the year 1853, had been clearly proved to have been such, yet the order of the county court under which, in 1858, the slave was sold by H., must be regarded as a valid order, and its effect was to take the slave out of the hands of H. as such administrator, and place him in his hands as commissioner of the court. The sureties of the administrator were thereby as completely discharged from liability as they would have been, had the administrator and the commissioner been different persons, and the former had delivered the slave to the latter under the order of the court.

Appeal of J. D. Odell and others from decree of the circuit court of New Kent county, rendered 30th June, 1882, in a cause in chancery wherein said Odell and others are plaintiffs, and

\* He was interested in the cause.

Robert Howle's administrator and others are defendants. The facts and proceedings are sufficiently stated in the opinion.

*J. Alfred Jones, Haw & Waddell,* and *O. G. Kean,* for the appellants.

*W. W. Gordon* and *Joseph Christian,* for the appellees.

HINTON, J., delivered the opinion of the court.

These are appeals from two decrees of the circuit court of New Kent county, rendered on the 30th day of June, 1882; which, however, as they have the same common object in view, may be practically treated as one. The question to be adjudicated in each of them is the same which was presented to this court in the case of *Lacy, &c.* v. *Odell and others,* which was decided on the 22d day of April, 1880, but not reported, when the decree appealed from was reversed, and the cause was remanded.

In that cause the plaintiffs, who are the appellants here, as early as the year 1866, filed their original bill in the circuit court of New Kent county against the personal representative of Robert Howle, in which they sought to subject the estate of the said Howle to the payment of the price for which he had, as they alleged in their bill, sold a slave belonging to the estate of James Odell; which slave had come into his hands as sheriff and administrator.

In the year 1872 they filed an amended and supplemental bill, in which they charge that not only was Howle, as sheriff and administrator of Odell, liable for the price of the slave, but that R. T. Lacy, James Stamper and others were also liable as securities upon the official bond of said Howle as sheriff, executed on the 13th day of July, 1854. They filed this bond with the bill, and made the sureties on that bond and the personal representatives of such of them as were dead defendants to that bill.

In December, 1875, the circuit court decreed that the sureties in the bond of July, 1854, were liable for the debt.

From that decree R. T. Lacy and the personal representative of James Stamper took an appeal to this court. And on the 22d day of April, 1880, that decree was reversed and the cause was remanded for further testimony to be taken, by either or both sides, and for such further proceedings to be had as might be proper in order to a final decree.

In the case of *Lacy, &c.* v. *Odell and others*, Burks, J., in delivering the opinion of this court, said : "No complaint is made of the decree on the original bill against Howle's estate. That decree is plainly right, as Howle was clearly accountable individually for the purchase money of the negro belonging to Odell's estate, in whatever capacity he may have received the money. The question on the supplemental bill is, whether the securities of Howle, as sheriff, are bound for that money? It is conceded," says he, "that they are not bound, unless the estate, of Odell was committed for administration to Howle, as sheriff, during the term of his office that commenced on the 1st day of July, 1854, and terminated on the 1st day of July, 1856, which time is covered by the official bond on which the sureties are sought to be held liable." This language and the terms of the decree indicate that the cause was sent back for the purpose of affording the appellants an opportunity to establish the liability of the sureties upon the bond of 1854, by testimony thereafter to be taken, and that the court did not regard the testimony theretofore taken as sufficient to sustain the decree of the circuit court.

When the cause went back the testimony of various witnesses was taken by the appellants, the effect of which, however, was not to strengthen, but to destroy their case. That testimony ascertains and establishes the fact that Howle did not qualify on the estate of Odell during the period from July, 1854, to July, 1856, but that the estate was committed to him on the 8th day of December, 1853. As a consequence, it is now conceded that

if there be any liability upon the appellees, it must be on the bond which Howle is alleged to have given as sheriff in July, 1852. Now, how can this contention be sustained? No such bond has been found, although diligent search has been made for it. And no witness has testified that he ever saw such a bond, or that he knows who were the securities upon it. Indeed, so far as we can discover from this record there is not the slightest evidence that any such bond ever existed; for the general statements of some of the witnesses that the sureties on the bond of 1854 were generally his sureties, and that they were all like Howle, whigs, certainly do not rise to the dignity of evidence. And the language attributed to one of the appellees by the witness, T. A. Lacy, could only have been intended to apply to the bond of 1854, to which he was a security, and on which it was then sought to make him liable. At that time the suggestion that there was any liability upon him by reason of the bond of 1852, had never been made. We have thus shown that there is no proof that the appellees were sureties in Robert Howle's bond as sheriff, and that they cannot be chargeable as sureties for his administration of the estate of James Odell.

But we need not stop here. For, if the appellees were sureties on the bond of 1852, at the time of administration taken out, we do not think that fact of itself would be sufficient to make them liable for the price of the slave. It appears from the record that the slave was sold in 1858, long after Howle had ceased to be sheriff; when there were no debts to be paid, after he had turned over the slave to Mrs. Atkinson, who had been the wife of Odell, and that the sale was made under an order of the county court of New Kent. In this state of facts, with the records of that court, which alone could shed any certain light upon the proceedings destroyed, this court could not indulge in any violent presumptions for the purpose of fixing a liability upon them. The court seeing that Howle might have sold the slave as commissioner, and if so, that these sureties would not be liable, would be compelled so to declare. In the

case of *Andrews* v. *Avory and als.,* 14 Gratt. 229, a case not unlike the present in many respects, this court exonerated the sureties. At page 249 of the report, Moncure, J., says, "the effect of the decree was to take them (the slaves) out of the hands of the administrator, and place them in his hands as commissioner of the court. The sureties of the administrator were thereby as completely discharged from liability as they would have been if the administrator and commissioner had been different persons, and the former had delivered the slaves to the latter, under the decree." And so we think we should hold in this case.

We find no errors in either of the decrees appealed from, and they must be affirmed.

DECREES AFFIRMED.